JASON R. HULL [11202]
JHULL@MOHTRIAL.COM
**MARSHALL OLSON & HULL, PC**
TEN EXCHANGE PLACE, SUITE 350
SALT LAKE CITY, UTAH 84111
TELEPHONE: 801.456.7655

RAPHAEL JANOVE*
RAFI@POLLOCKCOHEN.COM
GEORGE KREBS*
GKREBS@POLLOCKCOHEN.COM
ADAM POLLOCK*
ADAM@POLLOCKCOHEN.COM
**POLLOCK COHEN LLP**
111 BROADWAY, SUITE 1804
NEW YORK, NY 10006
TELEPHONE: 212.337.5361

ATTORNEYS FOR PLAINTIFFS AND
PROPOSED CLASS COUNSEL

ALAN M. FELDMAN*
AFELDMAN@FEDLMANSHEPHERD.COM
EDWARD S. GOLDIS*
EGOLDIS@FELMANDSHEPHERD.COM
ZACHARY ARBITMAN*
ZARBITMAN@FELMANDSHEPHERD.COM
**FELDMAN SHEPHERD WOHLGELERNTER
TANNER WEINSTOCK & DODIG, LLP**
1845 WALNUT STREET, 21ST FLOOR
PHILADELPHIA, PA 19103
TELEPHONE: 215.567.8300

NICHOLAS KLINE*
NKLINE@SHAHEENGORDON.COM
**SHAHEEN & GORDON, P.A.**
353 CENTRAL AVENUE, 2ND FLOOR
DOVER, NH 03820
TELEPHONE: 603.749.5000

*PRO HAC VICE FORTHCOMING

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SAMANTHA PAGANO and KRISTI BARNETT WILLIAMS, individuals on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NORDICTRACK, INC., a Utah corporation, iFIT Inc., a Utah corporation, and iFIT HEALTH & FITNESS, INC., a Utah corporation, <br><br> Defendants. | **COMPLAINT** <br><br> **[PROPOSED CLASS ACTION]** <br><br> **JURY TRIAL DEMANDED** <br><br><br> Case No.: 1:23-cv-0058 |

## CLASS ACTION COMPLAINT

Plaintiffs bring this class action on behalf of themselves and all others similarly situated against NordicTrack, Inc., iFIT, Inc., and iFIT Health & Fitness, Inc. (collectively "NordicTrack" or "Defendants"), and allege the following based upon personal information and investigation, and the investigation of their counsel, and on information and belief as to all other allegations:

## NATURE OF THE ACTION

1.      NordicTrack sells exercise bikes and treadmills for thousands of dollars. The bikes and treadmills use the operating software iFIT, which, until recently, offered live exercise classes.

2.      Despite marketing iFIT and describing live classes as a key functional feature of this exercise equipment, Defendants ceased offering all live classes on May 27, 2022.

3.      Plaintiffs purchased their NordicTrack equipment because of its live classes. Defendants, however, have not offered consumers any compensation or discounts after cancelling the live classes.

4.      Plaintiffs and the Classes (defined below) were therefore deceived and deprived of the benefit of their bargain. NordicTrack exercise bikes and treadmills are designed for iFIT's live classes and, without them, the equipment has no value to consumers. Alternatively, the machines have far less value than promised at the point of sale, because, without the advertised live class feature, the bikes and

treadmills are far less valuable than those made by other manufacturers that offer live classes.

## THE PARTIES

5.     Plaintiff Samantha Pagano lives in Kennebunk, Maine. On February 16, 2021, she purchased a NordicTrack S15i studio cycle bike and iFIT membership from Defendants.

6.     Plaintiff Kristi Barnett Williams lives in Damascus, Maryland. On December 31, 2021, she purchased a NordicTrack Commercial S22i Studio Cycle bike and iFIT membership from Defendants.

7.     Defendant iFIT Inc. is a Utah corporation headquartered in Logan, Utah.

8.     Defendant iFIT Health & Fitness Inc. is a Delaware corporation headquartered in Logan, Utah.  iFIT Health & Fitness Inc. is the corporate parent of iFIT Inc.

9.     Defendant iFIT Inc. and Defendant iFIT Health & Fitness Inc. (together, "iFIT") are health and fitness technology companies that sell NordicTrack fitness equipment, including stationary bikes, treadmills, ellipticals, and rowers, that paired with "iFIT" exercise software.

10.     Defendant NordicTrack, Inc. is a Utah corporation headquartered in Logan, Utah. The NordicTrack brand has been owned and managed by iFIT for over twenty years.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; the number of members of the proposed Classes exceeds 100; and many members of the proposed Classes are citizens of different states than the Defendant.

12.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1332(a)(1).

13.     This Court has personal jurisdiction over Defendants because they committed the tortious acts alleged herein in this District, regularly conduct business in this District, and have extensive contacts with this forum.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendants transact substantial business in this District.

## FACTUAL ALLEGATIONS

**A.     NordicTrack: A Brief Company History**

15.     NordicTrack began selling ski exercise machines in 1975. By the early 1990s, NordicTrack expanded beyond ski machines, producing non-motorized and motorized treadmills, weight training machines, elliptical machines, and various other fitness products.

16.     In the early 1990s, NordicTrack expanded at an unsustainable rate. In 1997, the company downsized and eventually filed for bankruptcy. The NordicTrack name was then sold to ICON Health & Fitness, which is now called iFIT.

17.     In 2020, iFIT reported sales of $3.8 billion, and had an estimated 16,000 employees. The company currently offers treadmills, bikes, ellipticals, rowers, and strength-training equipment.

18.     iFIT boasts "over 6.1 million Total Members and 1.5 million Total Fitness Subscribers in over 120 countries."[1] iFIT has also become "the #1 provider of large fitness equipment in the United States," a development it explains was "[d]riven by the adoption of our iFIT platform."

19.     iFIT's exercise equipment, including NordicTrack bikes and treadmills, uses the iFIT operating system, which previously "allow[ed] members to gain access to [Defendants'] full library of iFIT live and on-demand content."

20.     Defendants credit their success to selling hardware with iFIT software and live classes:

> Our iFIT operating system provides interactive experiences on all of our connected equipment brands, allowing members to gain access to our full library of iFIT *live* and on-demand content for $15/month for individuals or $39/month for families of up to five (or $396 when paid annually). ***We believe the combination of our proprietary software and experiential content connected with our interactive hardware*** creates a compelling value proposition for our rapidly growing

---

[1] *See* iFIT Health & Fitness Inc. Form S-1 SEC Registration Statement (Aug. 31, 2021)

member base and generates attractive recurring subscription revenue.

## B.   Live Fitness Classes and NordicTrack Bikes and Treadmills

21.    Defendants tether the purchase of NordicTrack exercise equipment to the purchase of a subscription iFIT membership, which ranges from $15–$40 per month. Defendants usually offer a free trial-membership with new purchases.

22.    The exercise equipment is designed to use iFIT software and Defendants point to the equipment's use of the software, including live classes, as a key feature of the equipment.

23.    Until recently, iFIT subscribers could access live classes and other live features:



24.     In 2021, consumers streamed 142 million live and on-demand interactive iFIT workouts.

25.     Defendants advertise that their exercise bikes and treadmills are designed to be used with iFIT. Defendants also repeatedly emphasize the features of iFIT in describing their exercise equipment.

26.     For instance, the web page advertising NordicTrack's Commercial S22i Studio Cycle prominently featured, as a key function of the bike, the live fitness classes offered through iFIT:



27.     The pictured user is selecting an iFIT class on the bike's screen. The website features a "30-Day iFIT Family Membership," and includes an "iFIT Workout Rating," with the disclaimer explaining: "Average IFIT workout rating is provided by each user at the end of a workout on their equipment."

28.     The gray banner at center below the image includes the iFIT logo with the text: "LIVE and On-Demand Worldwide Workouts."

29.     Live workouts are further emphasized in the description of the bike's touchscreen, which boasts that "LIVE iFIT workouts can be streamed with even more consistent quality . . ."



30.     The page continues with more promises about live functionality, including the ability to participate in live classes "in [ ] homes, on the local trails, or across the globe LIVE"; to "compete against the iFIT community" using the "LIVE WORKOUT LEADERBOARD," and to "[t]ext your trainers in real-time."



31.   The page also states that instructors, in real time, will automatically adjust the incline and resistance on the exercise bike:



32.   Defendants' descriptions of treadmills are similar, repeatedly highlighting live workouts and other live features.



33.   For instance, the webpage describing the Commercial X22i treadmill describes the live iFIT features as an integral part of the exercise equipment.



34.    It offers "Live and On-Demand World-wide Workouts" and the live feature of "Auto Adjusting Speed & Incline."

35.    The web page describing the X22i also emphasizes "LIVE WORKOUTS" when describing the equipment's touchscreen monitor:



36.    The page features the treadmill's ability to allow sellers to "Tune in, Tone up, Live!" and reiterates the live features of iFIT:



37.     In sum, NordicTrack exercise bikes and treadmills are designed for using iFIT, and Defendants describe iFIT's live classes as a key function of the equipment.

**C.     NordicTrack Announces the Cancellation of Live Studio Classes**

38.     In January 2022, NordicTrack canceled a significant portion of their live classes. By May 27, 2022, NordicTrack had canceled the rest.

39.     Yet, throughout 2022 and until the classes were cancelled on May 27, NordicTrack continued to market its equipment's LIVE features.

40.     For instance, as of May 7, 2022, NordicTrack offered a "MOTHER'S DAY SALE" for the S22i Studio bike, and prominently featured "LIVE and On-Demand Worldwide Workouts," "LIVE WORKOUTS," "Interactive with world-class trainers as they guide you through exciting and innovating live studio sessions," "Tune In, Tone Up, Live!", "LIVE NOW," and "LIVE WORKOUT LEADERBOARD":





41.   In early May 2022, NordicTrack announced that "After May 27, Live Studio Classes will be discontinued," and sent subscribers this message:



42.     NordicTrack's decisions came amidst its May 16, 2022 global settlement of litigation with Peloton wherein iFIT "agreed to remove certain on-demand leaderboard technology from its products."[2]

43.     In November 2021, Peloton sued iFIT in the District of Delaware for infringing Peloton's patents on live classes and on-demand leaderboard technology. As alleged, iFIT copied Peloton's live classes and live leaderboard to capture market share from Peloton. iFIT had been losing customers to Peloton as customers valued the live features. But once NordicTrack incorporated live features, its sales dramatically increased. *Peloton Interactive, Inc., v. iFIT, Inc.*, 21-cv-1605 (D. Del. Nov. 12, 2021).

44.     iFIT did not answer the Peloton complaint until March 3, 2022, and the case was dismissed on May 17, 2022.

45.     Thus, even though NordicTrack faced significant legal challenges to its use of live features and knew it was on track to discontinue live classes, it continued to sell equipment with "LIVE" features until the last minute.

**D.     Plaintiffs' Experiences**

***Plaintiff Pagano***

46.     Plaintiff Pagano purchased her S15i exercise bike and accompanying iFIT subscription from Defendants in February 2021.

---

[2] https://investor.onepeloton.com/news-releases/news-release-details/peloton-and-ifit-announce-settlement-all-pending-litigation.

47.     Ms. Pagano decided to buy an exercise bike after experiencing a health issue. Ms. Pagano's doctors had advised her to pursue an exercise program and she began to research at-home bike options.

48.     Ms. Pagano purchased the S15i bike primarily because it offered live classes. She knew that the social motivation of live classes would be important to her, as a former NCAA Division I athlete with a strong competitive drive.

49.     Ms. Pagano estimates she spent upwards of $600 more on the S15i bike than she would have had she chosen one of the other bikes she researched. She chose the S15i bike because of the live classes feature.

50.     In the months following her purchase, Ms. Pagano contacted NordicTrack several times. The bike had welding issues and the handlebar could not be tightened. Ms. Pagano said that the bike was "very difficult to use and unstable" at the time of purchase. Defendant had to replace Ms. Pagano's bike.

51.     Ms. Pagano received her replacement bike in May 2021.

52.     On July 13, 2022, Ms. Pagano climbed onto the bike and attempted to find a live class. When she could not find one, despite her searching, she called iFit. She was informed that live classes were no longer available.

53.     Ms. Pagano was incredibly frustrated. The live classes were the main reason she purchased this bike over other competitors' bikes. She had engaged with the live classes platform and sent in texts during the classes that were featured on-air.

54.     Defendants told her that no compensation would be given to those who had purchased bikes and treadmills for the live classes feature.

***Kristi Barnett Williams***

55.     Plaintiff Williams purchased her NordicTrack Commercial S22i Studio Cycle bike and accompanying iFIT subscription from Defendants on December 31, 2021.

56.     Ms. Williams purchased the S22i bike primarily because it offered live classes. The bike was purchased as a gift for Ms. Williams' husband, a long-time spin-class enthusiastic. Due to fitness studio closures during the pandemic, Ms. Williams' husband missed live classes. So Ms. Williams purchased the S22i bike for him as a present she knew he'd love.

57.     Initially, Ms. Williams and her husband were happy with the purchase. While they both worked out on the bike, her husband used it more. Mr. Williams enjoyed the live classes and worked hard to regain his pre-pandemic shape. He was motivated by the competition from the other riders during the live classes, even reaching the top 10 ranked riders on the leaderboard.

58.     But less than five months later, Defendants cancelled live classes, which had been the principal reason for Ms. Williams' purchase of the bike.

## CLASS ACTION ALLEGATIONS

59.     Plaintiffs brings this action on behalf of themselves and on behalf of the following proposed Nationwide Class, initially defined as follows:

> All persons in the United States who purchased a
> NordicTrack bike or treadmill on or before May 27, 2022,
> for personal, family, or household purposes, and not for
> resale.

60.     Plaintiff Pagano also brings this action on behalf of herself and on behalf

of the following proposed Maine Subclass, initially defined as follows:

> All persons in Maine who purchased a NordicTrack bike or
> treadmill on or before May 27, 2022, for personal, family,
> or household purposes, and not for resale.

61.     Plaintiff Williams also brings this action on behalf of herself and on

behalf of the following proposed Maryland Subclass, initially defined as follows:

> All persons in Maryland who purchased a NordicTrack
> bike or treadmill on or before May 27, 2022, for personal,
> family, or household purposes, and not for resale.

62.     Excluded from the proposed Classes are Defendants, their parents,

subsidiaries, affiliates, officers, and directors, and any entity in which a Defendant

has a controlling interest.

63.     Plaintiffs reserve the right to re-define any of the class definitions prior

to class certification and after having the opportunity to conduct discovery.

64.     The claims of all class members derive directly from a single course of

conduct by Defendants. Defendants have engaged and continue to engage in uniform

and standardized conduct toward the class members. Defendants do not differentiate,

in degree of care or candor, in their actions or inactions, or the content of their

statements or omissions, among individual class members.

65.     Certification of Plaintiffs' claims is appropriate because Plaintiffs can prove the elements of Plaintiffs' claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

66.     Accordingly, Plaintiffs bring this lawsuit as a class action on Plaintiffs' own behalf and on behalf of all other businesses, entities, and individuals similarly situated pursuant under Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these provisions.

67.     Specifically, this action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

68.     **Numerosity** (Fed. R. Civ. P. 23(a)(1)). The members of the proposed Classes are so numerous that their individual joinder would be impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed the class includes many tens of thousands of members. The precise number of class members, and their addresses, are unknown to Plaintiffs at this time, but can be ascertained from Defendants' records.

69.     **Ascertainability**. The Classes are ascertainable because their members can be readily identified using business records, and other information kept by Defendants in the usual course of business and within their control or Plaintiffs

and the Classes themselves. Plaintiffs anticipate providing appropriate notice to the Classes to be approved by the Court after class certification, or pursuant to court order.

70.    **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)). Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual class members. The common legal and factual questions include, without limitation:

(a)    Whether Defendants knew, or should have known, that they would discontinue the live classes feature they advertised in selling their bikes and treadmills;

(b)    Whether Defendants concealed their knowledge that they would discontinue the live classes feature;

(c)    Whether inclusion of the live classes feature in the bikes and treadmills constituted a material fact that reasonable purchasers would have considered in deciding whether to purchase a NordicTrack bike or treadmill;

(d)    Whether Defendants' conduct is likely to deceive an objectively reasonable consumer;

(e)    Whether the bikes and treadmills are merchantable;

(f)    Whether the bikes and treadmills are fit for their intended use;

(g)    Whether Defendants' bikes and treadmills have any value;

(h)    Whether Defendants' bikes and treadmills are worthless;

(i)    Whether Defendants' omissions and misrepresentations regarding the live class feature or value of its bikes and treadmills described herein constitute unfair or deceptive acts or practices in violation of state consumer protection laws;

(j)     Whether Defendants have been unjustly enriched;

(k)     Whether Plaintiffs and the Class Members are entitled to damages and
restitution, including for the value of the purchase price, and the proper
measure of Plaintiffs' and the Class Members' losses.

71.     **Typicality of Claims** (Fed. R. Civ. P. 23(a)(3)).  The claims of the
Plaintiffs and the respective Classes are based on the same legal theories and arise
from the same unlawful and willful conduct of Defendants, resulting in the same
injury to the Plaintiffs and the respective Classes. Plaintiffs and all class members
are similarly affected by Defendants' wrongful conduct and were damaged in the
same way. Plaintiffs' interests coincide with, and are not antagonistic to, those of the
other class members. Plaintiffs have been damaged by the same wrongdoing set forth
in this Complaint. Plaintiffs and the class members would not have purchased, or
would have been willing to purchase only at a lower price, NordicTrack exercise bikes
or treadmills, had they known that iFIT live classes would not be offered.

72.     **Adequacy of Representation** (Fed. R. Civ. P. 23(a)(4)). Plaintiffs are
adequate representatives of the Classes because their interests do not conflict with
the interests of the class members, and they have retained counsel competent and
experienced in complex class action, business competition, and consumer litigation.
Plaintiffs and their counsel will fairly and adequately protect the interest of the class
members.

73.     **Superiority of a Class Action** (Fed. R. Civ. P. 23(b)(3)). A class action
is superior to other available means for the fair and efficient adjudication of the

claims of Plaintiffs and class members. There is no special interest in class members individually controlling the prosecution of separate actions. The damages suffered by individual class members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. Further, it would be virtually impossible for the class members individually to redress effectively the wrongs done to them. And, even if class members themselves could afford such individual litigation; the court system could not, given the thousands or even millions of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

74. **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief** (Fed. R. Civ. P. 23(b)(1) and (2)). In the alternative, this action may properly be maintained as a class action, because:

(a)     the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Defendants; or

(b)     the prosecution of separate actions by individual class members would

create a risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c)     Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

### **FIRST CAUSE OF ACTION**

**Magnuson-Moss Warranty Act**
**15 U.S.C. § 2301, *et seq.***
**(on behalf of Plaintiffs and the Nationwide Class)**

75.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

76.     Plaintiffs bring this count individually and for the Nationwide Class.  In the alternative, Plaintiff Pagano brings this cause of action on behalf of herself and the Maine Subclass, and Plaintiff Williams brings this cause of action on behalf of herself and the Maryland Subclass.

77.     NordicTrack bikes and treadmills are consumer products as defined by 15 U.S.C. § 2301(1).

78.     Plaintiffs and the Class members are consumers as defined in 15 U.S.C. § 2301(3).

79.     Defendants are suppliers and warrantors as defined in 15 U.S.C. §§ 2301(4) and (5).

80.     15 U.S.C. § 2310(d) is satisfied because Plaintiffs properly invoke the jurisdiction of this Court under CAFA.

81.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with written and implied warranties.

82.     Defendants provided Plaintiffs and Class members "written warranties" within the meaning of 15 U.S.C. § 2301(6), including that the bikes and treadmills offered an "iFIT experience" of live classes and other live features, including, among others:

- "LIVE and On-Demand Worldwide Workouts"

- "LIVE iFIT workouts can be streamed with even more consistent quality on the upgraded Rotating HD Smart Touchscreen"

- "Tune in, Tone Up, LIVE"

- "LIVE WORKOUTS"

- "Join trainers in their homes, on the local trails, or across the globe LIVE."

- "LIVE WORKOUT LEADERBOARD"

- "Text your trainers in real-time."

- "20% LIVE INCLINE CONTROL"

- "10% LIVE DECLINE CONTROL"

- "Our trainers LIVE control your incline, decline, and resistance quieter and more accurately so you can enjoy an even better workout"

- "Stream Unlimited Trainer-Led Workouts"

- "Discover your next favorite workout with our elite iFIT trainers. From live studio sessions to on-demand workouts that span the globe."

- "LIVE Interactions"

- "Join trainer-led classes where the instructor digitally adjusts your LIVE incline and resistance, keeping you focused on your high-energy workout."

- "Stream high-energy studio sessions with world-class trainers who LIVE control your machine's decline, incline, and resistance in real-time."

- "LIVE INTERACTIVE TRAINING"

- "Our on-demand, streaming workouts feature LIVE Interactions where our world-class trainers digitally adjust your incline, decline, and resistance for a great workout."

83.    Defendants also impliedly warranted to Plaintiffs and the class members that the bikes and treadmills were free from defects, of merchantable quality, and fit for the ordinary and particular purposes for which this equipment is intended to be used, including live classes via iFIT.

84.    Despite repeated demands, Defendants have failed to remedy the bikes' and treadmills' defects within a reasonable time, and/or a reasonable number of attempts, thereby breaching the written and implied warranties.

85.    As a result of Defendants' breaches of the written and implied warranties, and Defendants' failure to remedy them within a reasonable time, Plaintiffs and the class members have suffered damages.

86.    In addition, under 15 U.S.C. § 2310(d)(2), Plaintiffs and the class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and other Class members in connection with the commencement and prosecution of this action.

87.     Furthermore, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d) and damages as a result of Defendants' violation of their warranties.

**SECOND CAUSE OF ACTION**

**Breach of Express Warranty**
**(on behalf of Plaintiffs and the Nationwide Class)**

88.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

89.     Plaintiffs bring this count individually and for the Nationwide Class.  In the alternative, Plaintiff Pagano brings this cause of action on behalf of herself and the Maine Subclass, and Plaintiff Williams brings this cause of action on behalf of herself and the Maryland Subclass.

83.     As detailed above, Defendants make, market, and sell bikes and treadmills.

84.     Defendants expressly warrant that the bikes and treadmills offered an "iFIT experience" of live classes and other live features, including, among others:

- "LIVE and On-Demand Worldwide Workouts"

- "LIVE iFIT workouts can be streamed with even more consistent quality on the upgraded Rotating HD Smart Touchscreen"

- "Tune in, Tone Up, LIVE"

- "LIVE WORKOUTS"

- "Join trainers in their homes, on the local trails, or across the globe LIVE."

- "LIVE WORKOUT LEADERBOARD"

- "Text your trainers in real-time."

- "20% LIVE INCLINE CONTROL"

- "10% LIVE DECLINE CONTROL"

- "Our trainers LIVE control your incline, decline, and resistance quieter and more accurately so you can enjoy an even better workout"

- "Stream Unlimited Trainer-Led Workouts"

- "Discover your next favorite workout with our elite iFIT trainers. From live studio sessions to on-demand workouts that span the globe."

- "LIVE Interactions"

- "Join trainer-led classes where the instructor digitally adjusts your LIVE incline and resistance, keeping you focused on your high-energy workout."

- "Stream high-energy studio sessions with world-class trainers who LIVE control your machine's decline, incline, and resistance in real-time."

- "LIVE INTERACTIVE TRAINING"

- "Our on-demand, streaming workouts feature LIVE Interactions where our world-class trainers digitally adjust your incline, decline, and resistance for a great workout."

85.    The above statements are affirmations of fact about the "iFIT experience" of live classes and other live features and promises relating to the goods.

86.    These warranties were part of the basis of the bargain, and Plaintiffs and class members saw and relied on these warranties.

87.    In fact, the bikes and treadmills do not conform to these express representations because Defendants no longer offer live classes via iFIT.

88.     Plaintiffs and class members were injured as a direct and proximate result of Defendants' breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Defendant's bikes and treadmills if they had known that Defendant would stop offering live classes via iFIT, or (b) they overpaid for the product because the bikes and treadmills are sold at a price premium due to the live classes feature.

### THIRD CAUSE OF ACTION

**Implied Warranty of Merchantability**
**(on behalf of Plaintiffs and the Nationwide Class)**

89.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

90.     Plaintiffs bring this count individually and for the Nationwide Class.  In the alternative, Plaintiff Pagano brings this cause of action on behalf of herself and the Maine Subclass, and Plaintiff Williams brings this cause of action on behalf of herself and the Maryland Subclass.

91.     The Uniform Commercial Code § 2-314 states that "a warranty that [] goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." "Merchantable" goods must be "fit for the ordinary purposes for which the goods are used."

92.     Defendants are and were, at all relevant times, a merchant with respect to fitness products, and with respect to bikes and treadmills in particular.  The bikes and treadmills at issue constitute "goods" under the UCC.

93.    Plaintiffs and class members purchased the bikes and treadmills with the understanding that they would be able to utilize the iFIT live classes feature with the equipment.

94.    As the manufacturer of the bikes and treadmills, Defendants impliedly warranted to Plaintiffs and the class that the equipment was of merchantable quality. In fact, the bikes and treadmills are not in merchantable condition and are not fit for the ordinary purpose for which bikes and treadmills with live class features are used. Specifically, Defendants' cancellation of the live classes feature on the bikes and treadmills makes them unfit for ordinary purposes.

95.    Thus, Defendants breached the implied warranty of merchantability in connection with the sale and distribution of the bikes and treadmills.

96.    Defendants' breach directly caused Plaintiffs and class members harm. Had Defendants not impliedly warranted that the bikes and treadmills were fit and safe for their ordinary purpose, Plaintiffs and class members would not have bought the products.

## FOURTH CAUSE OF ACTION

### Implied Warranty of Fitness
### (on behalf of Plaintiffs and the Nationwide Class)

97.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

98.    Plaintiffs bring this count individually and for the Nationwide Class. In the alternative, Plaintiff Pagano brings this cause of action on behalf of herself and

the Maine Subclass, and Plaintiff Williams brings this cause of action on behalf of herself and the Maryland Subclass.

99.     The Uniform Commercial Code § 2-315 states that where a seller "has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

100.    Plaintiffs and class members purchased NordicTrack bikes and treadmills for the particular purpose of exercising with live classes.

100.    Defendants knew, or had reason to know, that Plaintiffs and class members were purchasing the exercise equipment for the particular purpose of the live class feature.   Defendants are aware that consumers purchase bikes and treadmills to use the live class feature.

101.    Defendants market themselves as knowledgeable and effective developers and purveyors of exercise equipment.

102.    Defendants knew, or had reason to know, that Plaintiffs and class members would justifiably rely on Defendants' particular skill and knowledge of exercise equipment in selecting or furnishing products suitable for exercising.

103.    Plaintiffs and class members did justifiably rely on Defendants' judgment and skill.

104.    Due to Defendants' cancellation of iFIT live classes, the bikes and

treadmills are no longer suitable for their intended purpose.

105.    Thus, Defendants breached their implied warranty of fitness concerning the bikes and treadmills.

106.    As a result of the breach, Plaintiffs and the class suffered economic harm and damage.   The exercise equipment's unsuitability was a substantial factor in causing their harm.

## FIFTH CAUSE OF ACTION

### Utah Consumer Sales Practices Act
### (on behalf of Plaintiffs and the Nationwide Class)

90.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

91.    Plaintiffs bring this count individually and for the Nationwide Class.

92.    Defendants' conduct alleged above constitutes deceptive acts or practices in connection with a consumer transaction under Utah Code § 13–11–1 *et seq*. Defendants' conduct was at all material times developed, orchestrated, and implemented in part out of their headquarters in Utah by their senior management in conjunction with those under their direct control.

93.    The Utah Consumer Sales Practice Act is intended not only to protect consumers but also protect law-abiding competitors and, as much as possible, conform Utah state law to policies of the Federal Trade Commission Act.

94. The purchase of bikes and treadmills satisfy the definition of a consumer transaction in that it required the Plaintiffs and the Nationwide Class to expend money on goods or services.

95. Defendants violated Utah Code section 13–11–4(2)(a)'s proscription against indicating that the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits, if it does not. Defendants indicated that the treadmills and bikes would feature live classes. But Defendants canceled the live classes, a key feature of the treadmills and bikes.

96. Defendants violated Utah Code section 13–11–4(2)(e)'s proscription against indicating that the subject of a consumer transaction has been supplied in accordance with a previous representation. Defendants represented that the bikes and treadmills would feature live classes on an ongoing basis, but Defendants canceled the classes abruptly.

97. Defendants violated Utah Code section 13–11–1(f)'s proscription against indicating that the subject of a consumer transaction will be supplied in greater quantity than the supplier intends. Defendants represented that the bikes and treadmills would feature live classes on an ongoing basis, but Defendants canceled the classes abruptly.

98. If not for Defendants' deceptive acts or practices or unconscionable acts or practices in violation of the Act, Plaintiffs and the Nationwide Class would not have paid the purchase price for the bikes and treadmills or would have paid less.

99.     Plaintiff Pagano, Plaintiff Williams, and the Nationwide Class are entitled to recover $2,000 in statutory fines or their damages caused by Defendants' violation of Utah Code § 13–11–1 *et seq.*, pursuant to Utah Code § 13–11–19(2) and (4). They are further entitled to a declaratory judgment that Defendants' acts and practices described herein violate Utah Code § 13–11–1 *et seq.* pursuant to Utah Code § 13–11–19(1)(a) and (3). Defendants' acts and practices described herein violate Utah Code § 13–11–1 *et seq.* Finally, Plaintiff Pagano, Plaintiff Williams, and the Nationwide Class are entitled to an award of attorneys' fees under Utah Code § 13-11-19 (5).

## SIXTH CAUSE OF ACTION

### Utah Truth in Advertising Act
### (on behalf of Plaintiffs and the Nationwide Class)

100.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

101.    Plaintiffs bring this count individually and for the Nationwide Class.

102.    Utah's Truth in Advertising Act (the "TIAA") is intended to prevent deceptive, misleading, and false advertising practices. Utah Code Ann. § 13–11a–1. "Advertisement" means any written, oral, or graphic statement or representation made by a supplier in connection with the solicitation of business. Utah Code § 13–11a–2(1).

103.    Actionable deceptive trade practices occur under Utah Code § 13–11a–3 when, in the course of a person's business, that person:

(e) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

. . .

(i) advertises goods or services or the price of goods and services with intent not to sell them as advertised;

(j) advertises goods or services with intent not to supply a reasonable expectable public demand, unless: (i) the advertisement clearly and conspicuously discloses a limitation of quantity;

. . .

(t) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

104. Defendants' cancellation of the live classes feature on the bikes and treadmills violates the TIAA. First, Defendants baited consumers to purchase their bikes and treadmills with false advertising and representations containing express promises of "LIVE WORKOUTS," among others. After the consumer purchased the bikes and treadmills, Defendants cancelled the live classes.

105. Plaintiffs seek to (i) recover from the Defendants the amount of actual damages sustained or $2,000, whichever is greater; (ii) recover costs and attorneys' fees; and (iii) have the Court order the defendants to promulgate corrective advertising by the same media and with the same distribution and frequency as the advertising found to violate the TIAA. Defendants also acted with oppression, fraud,

and malice, and in conscious disregard of Plaintiffs' rights entitling Plaintiffs to exemplary damages in an amount according to proof.

## SEVENTH CAUSE OF ACTION

### Maine Unfair Trade Practices Act
### (on behalf of Plaintiff Pagano and the Maine Subclass)

106.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

107.    Plaintiff Samantha Pagano brings this count on behalf of herself and on behalf of the Maine Subclass.

108.    The Maine Unfair Trade Practices Act ("Maine UTPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Me. Rev. Stat. Ann. Tit. 5 § 207.

109.    Plaintiff, the members of the Maine Subclass, and Defendants are "persons" within the meaning of the Maine UTPA, and Defendants are engaged in "trade" or "commerce" within the meaning of the Maine UTPA.  Me. Rev. Stat. Ann. Tit 5 § 206(2)-(3).

110.    Plaintiff and the members of the Maine Subclass are persons who purchased Defendants' above-referenced products primarily for personal, family, or household purposes within the meaning of 5 M.R.S.A. § 213(1).

111.    Defendants violated the Maine UTPA as detailed above, including in marketing and selling its equipment with live classes—and subsequently cancelling the live features.

112.    Pursuant to Me. Rev. Stat. Ann. Tit. 5 § 213, Plaintiff Pagano and members of the Maine Subclass seek an order awarding damages, punitive damages, and any other just and proper relief available under the Maine UTPA.

## EIGHTH CAUSE OF ACTION

### Maryland Consumer Protection Act
### (on behalf of Plaintiff Williams and the Maryland Subclass)

113.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

114.    Plaintiff Kristi Williams brings this count on behalf of herself and on behalf of the Maryland Subclass.

115.    The Maryland Consumer Protection Act ("MCPA") outlaws "[u]nfair, abusive, or deceptive trade practices." Md. Code Ann., Com. Law § 13-301.

116.    Defendants are each merchants within the meaning of the MCPA, § 13-101(g), and are subject to all MCPA provisions prohibiting unfair or deceptive trade practices.

117.    Defendants violated the MCPA as detailed above, including by marketing and selling its equipment with live classes—and subsequently cancelling the live features—in violation of Md. Code Ann., Com. Law § 13-301(5), by advertising live classes without the intent to sell them as offered and without intent to supply a reasonably expected demand.

118.    Pursuant to Md. Code Ann., Com. Law § 13-408, Plaintiff Williams and members of the Maryland Subclass seek an order awarding compensatory damages, as well as attorneys fees, costs, and pre-judgment interest.

## NINTH CAUSE OF ACTION

### Fraud by Omission
### (on behalf of Plaintiffs and the Nationwide Class)

119.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

120.    Plaintiffs bring this count individually and for the Nationwide Class.  In the alternative, Plaintiff Pagano brings this cause of action on behalf of herself and the Maine Subclass, and Plaintiff Williams brings this cause of action on behalf of themselves and the Maryland Subclass.

121.    As alleged in detail above, Defendants made materially misleading omissions concerning the availability of the iFIT live classes feature on their bikes and treadmills.   Defendants concealed information concerning their plan to discontinue that feature on their exercise equipment.

122.    In deciding to purchase consumer products from Defendants, Plaintiffs and the class reasonably relied on Defendant's omissions to form the mistaken belief that Defendant's bikes and treadmills would continue to support the iFIT live classes feature.

123.    As alleged above, Defendants' fraudulent conduct was knowing and intentional.  The omissions made by Defendants were intended to induce and actually

induced Plaintiffs and class members to purchase the bikes and treadmills.   The Plaintiffs would not have purchased the products had they known that the live classes feature would be discontinued.   Class-wide reliance can be inferred because Defendants' omissions were material, *i.e.*, a reasonable consumer would consider them important to their purchase decision.

124.   Defendants had a duty to disclose their plan to discontinue the iFIT live classes feature because they had superior knowledge and access to facts about that plan.  A reasonable consumer could not have expected or known that the live classes feature would be discontinued abruptly.

125.   Plaintiffs and class members were injured as a direct and proximate result of Defendants' fraudulent omissions because (a) they would not have purchased the bikes and treadmills if they had known they would not have the live classes feature; (b) they overpaid for the bikes and treadmills because they are sold at price premiums due to Defendants' false representations; or (c) they received a product that is worthless for its intended purpose.  Plaintiffs and the class are entitled to damages and other legal and equitable relief as a result.

126.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Defendants.   Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## TENTH CAUSE OF ACTION

### Unjust Enrichment
### (on behalf of Plaintiffs and the Nationwide Class)

127.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

128.   Plaintiffs bring this count individually and for the Nationwide Class.  In the alternative, Plaintiff Pagano brings this cause of action on behalf of herself and the Maine Subclass, and Plaintiff Williams brings this cause of action on behalf of themselves and the Maryland Subclass.

129.   Plaintiffs and class members purchased bikes and treadmills from Defendant which were advertised as including the iFIT live classes feature.  They reasonably believed that the bikes and treadmills would function as advertised, and would be fit for their expected ordinary purpose.  Plaintiffs and class members did not, and could not, have known that Defendant would later eliminate the iFIT live classes feature.

130.   Plaintiffs and class members conferred a tangible and material economic benefit upon Defendant by purchasing the bikes and treadmills.

131.   In exchange for the purchase price, Defendant provided products that were stripped of a key feature—the iFIT live classes—making the products unfit for their ordinary use. Defendants knew and appreciated the benefit they incurred from consumers purchasing the bikes and treadmills.

132.    Thus, Defendant is aware of, and has retained, the unjust benefit conferred upon them by Plaintiffs and the class members.

133.    Defendant received a direct and unjust benefit, at the Plaintiffs' expense.

134.    Plaintiffs and the class seek restitution.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Classes, prays for relief and judgment against Defendants as follows:

A.    certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Classes, and designating Plaintiffs' counsel as Class Counsel;

B.    awarding Plaintiffs and the Classes statutory fines, compensatory damages and actual damages, trebled, in an amount exceeding $5,000,000, to be determined by proof;

C.    declaring that Defendants' bikes and treadmills are unfit for ordinary purposes;

D.    requiring Defendants to preserve all evidence relevant to this lawsuit and notify all owners of Defendants' bikes and treadmills with whom they come in contact of the pendency of this and related litigation;

E.    granting all other declaratory and equitable relief;

F.    awarding Plaintiffs and the Classes the costs of prosecuting this action, including expert witness fees;

G.    awarding Plaintiffs and the Classes reasonable attorneys' fees and costs as allowable by law;

H.    awarding pre-judgment and post-judgment interest; and

I.    granting any other relief as this Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED this 11th day of May, 2023.

MARSHALL OLSON & HULL, PC

BY:   <u>/s/ Jason R. Hull    </u>
        JASON R. HULL

POLLOCK COHEN LLP
        RAPHAEL JANOVE
        GEORGE KREBS
        ADAM POLLOCK

FELDMAN SHEPHERD WOHLGELERNTNER
TANNER WEINSTOCK & DODIG, LLP
        ALAN M. FELDMAN
        EDWARD S. GOLDIS
        ZACHARY ARBITMAN

SHAHEEN & GORDON, P.A.
        NICHOLAS KLINE

ATTORNEYS FOR PLAINTIFFS AND PROPOSED
CLASS COUNSEL