IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SAMANTHA PAGANO, KRISTI BARNETT WILLIAMS, and JORDAN SILVA, individuals on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NORDICTRACK, INC., a Utah Corporation; iFIT INC., a Delaware Company; and iFIT HEALTH & FITNESS INC., a Delaware Company, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' RENEWED MOTION TO COMPEL ARBITRATION** <br><br> Case No. 1:23-CV-00058-JNP-DAO <br><br> District Judge Jill N. Parrish <br> Magistrate Judge Daphne A. Oberg |

Before the court is a renewed motion to compel arbitration filed by Defendants iFIT, Inc., and iFIT Health & Fitness Inc. (collectively, "iFIT"), and NordicTrack Inc. ECF No. 42. Plaintiffs Samantha Pagano, Kristi Barnett Williams, and Jordan Silva oppose Defendants' motion, contending that the parties have not agreed to arbitrate this dispute. For the reasons stated herein, Defendants' renewed motion to compel arbitration is GRANTED.

## BACKGROUND

The iFIT Defendants sell fitness equipment, including stationary bikes, treadmills, ellipticals, and rowers, under their NordicTrack brand. ECF No. 1 ¶¶ 7–9. Many individuals who purchase NordicTrack equipment also purchase an iFIT membership, which provides users with access to training supports, including but not limited to "creation, customization, management, mapping, geolocation, routing, tracking, and analysis of [their] workouts, video workouts, support, and other like services." ECF No. 42-1 ("Facer Decl."), at 22. NordicTrack exercise equipment is also operable without iFIT's complementary training services. *Id.*

In their complaint, Plaintiffs allege that iFIT's live classes were a key feature of NordicTrack's equipment and that Defendants publicly ascribed their sales success to the combination of NordicTrack equipment and iFIT's live exercise classes and related services. ECF No. 1 ¶¶ 19–20, 22. All Plaintiffs further allege that they purchased NordicTrack equipment relying on Defendants' representations that iFIT's live classes and other training support services would be available to them. *Id.* ¶¶ 53, 58. Plaintiffs initiated this lawsuit when iFIT terminated their live fitness class offerings for NordicTrack equipment users without compensating those users. ECF No. 41 ¶ 3.

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), federal district courts may affirmatively order parties to engage in arbitration. *See* 9 U.S.C. § 1 *et seq.*; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). "[W]hether or not [a party] is bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis entered into by the parties." *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) (quoting *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964)).

A motion to compel arbitration is reviewed under a similar standard as that applicable to a motion for summary judgment. "The existence of an agreement to arbitrate 'is simply a matter of contract between the parties; [arbitration] is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.'" *Hardin v. First Cash Fin. Servs.*, 465 F.3d 470, 474–75 (10th Cir. 2006) (alteration in original) (quoting *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997)). "When parties dispute the making of an agreement to arbitrate," the court should permit the matter to proceed to a jury trial on the existence of an agreement to arbitrate "unless there are no genuine issues of material fact regarding the parties'

agreement." *Id.* Courts should also "give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012) (quoting *Seatex*, 126 F.3d at 1283). As in a summary judgment case, the moving party bears the burden to produce evidence that an enforceable agreement to arbitrate exists, which causes the burden to shift to the nonmoving party to raise a genuine dispute of material fact as to the agreement's existence. *Id.*

**ANALYSIS**

Defendants move to compel Plaintiffs to arbitrate this dispute. The parties agree that it is the court's role to determine whether Plaintiffs are bound by the iFIT Terms. If the court finds those terms to be binding, however, the parties disagree about whether the court should also determine the arbitrability of Plaintiffs' claims thereunder or whether the arbitrator should resolve that question. The court concludes that (I) Plaintiffs each assented to the iFIT Terms, including the arbitration clause contained therein; (II) the parties agreed to delegate the question of their claims' arbitrability to the arbitrator; and (III) the arbitration clause is enforceable notwithstanding Plaintiffs' assertion that the iFIT Terms are illusory, unconscionable, or in conflict with federal law. Defendants' motion is therefore granted for the reasons stated herein.

## I.    PLAINTIFFS' ASSENT TO THE IFIT TERMS

Under the FAA, the court's first role is to determine whether the parties formed an arbitration agreement. *See* 9 U.S.C. § 2; *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) ("[W]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide."). Whether the parties formed an arbitration agreement turns on the issue of whether Plaintiffs assented to the iFIT Terms, which include the following arbitration clause:

> You acknowledge and agree that ICON may, at its sole discretion, require you to submit any disputes arising from the use of these Terms of Use or the ICON Sites,

3

> including disputes arising from or concerning their interpretation, violation,
> invalidity, non-performance, or termination, to final and binding arbitration under
> the Rules of Arbitration of the American Arbitration Association applying Utah
> law.

ECF No. 42-1, at 32. Notwithstanding Plaintiffs' objections, the court concludes that Defendants

have produced sufficient evidence to demonstrate that each Plaintiff assented to the iFIT Terms

and the arbitration clause contained therein.

Ms. Pagano signed up for an iFIT membership in February 2021. Facer Decl. ¶ 7; ECF No.

44-2 ("Pagano Decl.") ¶ 6. Ms. Pagano was able to do so only because she physically clicked a

checkbox accompanied by language signaling that she had "read and agreed to iFIT's Terms of

Use," which appeared in standard-sized dark text against a white background. Facer Decl. ¶ 9. In

December 2021, Mr. Silva signed up for an iFIT membership in the same manner. ECF No. 44-4

("Silva Decl.") ¶ 6; Facer Decl. ¶¶ 21, 23.

Clickwrap agreements, like those that Ms. Pagano and Mr. Silva entered into, are typically

considered enforceable and are "routinely upheld." *Hancock v. AT&T Co.*, 701 F.3d 1248, 1256

(10th Cir. 2012) (quoting *Smallwood v. NCSOFT Corp.*, 730 F. Supp. 2d 1213, 1226 (D. Haw.

2010)). Under Utah law, contract formation in general requires merely that the proponent of the

contract prove "an offer, an acceptance, and consideration" by a preponderance of the evidence.

*Cea v. Hoffman*, 276 P.3d 1178, 1185 (Utah Ct. App. 2012) (citing *Golden Key Realty, Inc. v.*

*Mantas*, 699 P.2d 730, 732 (Utah 1985)). "An acceptance is a manifestation of assent to an offer,

such that an objective, reasonable person is justified in understanding that a fully enforceable

contact has been made." *Id.* at 1185 (quoting *Cal Wadsworth Constr. Co. v. City of St. George*,

898 P.2d 1372, 1376 (Utah 1995)).

The clickwrap agreement at issue would likely pass muster under the established test for

contract formation under Utah law. Before Ms. Pagano and Mr. Silva were able to sign up for an

iFIT membership, they were required to affirmatively click a checkbox located adjacent to a notice stating that they had each read and agreed to the iFIT Terms. This notice was conspicuous and provided both of them the opportunity to review the iFIT Terms for as long as they chose. These Plaintiffs affirmatively manifested assent to the iFIT Terms by clicking the checkbox by the notice. The court thus concludes that Defendants have produced sufficient evidence to show that a valid agreement was formed with each of these two Plaintiffs. *See Penhall v. Young Living Essential Oils, LC*, No. 2:20-cv-00617, 2022 WL 15504063, at *4–5 (D. Utah Oct. 27, 2022) (upholding a similar clickwrap agreement under Utah law).

Ms. Williams assented to the iFIT Terms in a different manner. While Ms. Pagano and Mr. Silva each signed up for an iFIT membership online after purchasing a NordicTrack exercise machine in person, Ms. Williams purchased both a NordicTrack exercise bike and an accompanying iFIT membership through a single online purchase. ECF No. 44-3 ("Williams Decl.") ¶¶ 2, 5; Facer Decl. ¶ 12. After Ms. Williams entered her payment information on the checkout page, she was prompted to click a button labeled "Pay With Credit Card" to complete her purchase. Facer Decl. ¶ 15. Immediately above that button was a notice, which stated the following in standard-sized dark text on a white background: "By clicking 'Pay With Credit Card,' you agree to NordicTrack's Terms of Use and Privacy Policy & Return Policy." *Id.*, ¶ 16. The underlined portions of this notice contained hyperlinks to the iFIT Terms and a related policy, which Ms. Williams could review for as long as she chose before she completed her purchase. *Id.* ¶¶ 17–19.

Some courts consider sign-in wrap agreements, like that which Ms. Williams agreed to, as more suspect than clickwrap agreements. *See, e.g.*, *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 868 (9th Cir. 2022) ("[P]ending further word from the California appellate

courts, . . . sign-in wrap agreements are in a gray zone; and clickwrap . . . agreements are presumptively enforceable."). That said, a recent District of Utah opinion, following the Second Circuit and the D.C. Circuit, upheld a sign-in wrap agreement when the notice of the terms was "unobscured," "conspicuous," "underlined," and "in close proximity to the 'REGISTER' button." *Route App, Inc. v. Heuberger*, 2022 U.S. Dist. LEXIS 115453, at *9–10 (D. Utah June 28, 2022) (internal quotation marks omitted). This court agrees with the observation that a sign-in wrap agreement meets the ordinary requirements for contract formation so long as the user receives "reasonable notice of the terms" through the "layout and language of the site" such that a "reasonably prudent . . . user" would be on "'reasonable notice that a click'—i.e., signing up— 'will manifest assent to an agreement.'" *Selden*, 4 F.4th at 156 (quoting *Meyer*, 868 F.3d at 75, 77); *Cea*, 276 P.3d at 1185 (stating that an "acceptance" under Utah law requires merely "a manifestation of assent to an offer, such that an objective, reasonable person is justified in understanding that a fully enforceable contact has been made" (internal quotation marks omitted)). Moreover, the formatting of iFIT's checkout page met each of those requirements, mirroring the relevant conditions discussed in *Route App, Inc.* As with the clickwrap agreements discussed above, this court thus concludes that the sign-in wrap agreement, of which Ms. Williams received notice when she purchased her NordicTrack equipment and her iFIT membership, is enforceable under Utah law. The parties have given the court no reason to doubt this conclusion.

Plaintiffs assert that they were not aware of the iFIT Terms, did not see the notices of those terms on Defendants' website, and did not intend to assent to those terms. But they simultaneously argue that they *were* each required to agree to the iFIT Terms in order to stream iFIT's workout classes and related content on their NordicTrack exercise equipment. Pagano Decl. ¶¶ 6–9; Silva Decl. ¶¶ 6–9; Williams Decl. ¶¶ 5–8. Given Plaintiffs' contradictory assertions, the court finds

their declarations insufficient to create a genuine dispute as to whether each of them objectively manifested an intent to be bound by the iFIT Terms. Defendants' uncontroverted testimony shows that Plaintiffs could not have purchased or signed up for an iFIT membership without being clearly presented with a conspicuous notice that proceeding would require and constitute agreement to the iFIT Terms. ECF No. 42-1 ¶¶ 9, 10, 20, 23. Ms. Pagano and Mr. Silva manifested assent to those terms by clicking a checkbox stating they had each read and agreed to the iFIT Terms. Silva Decl. ¶ 6; Facer Decl. ¶¶ 7, 21, 23; Pagano Decl. ¶ 6. Ms. Williams, for her part, was presented with a clear notice, located directly above the "Pay With Credit Card" button, informing her that by completing her purchase, she also agreed to the iFIT Terms. Williams Decl. ¶¶ 2, 5; Facer Decl. ¶ 12.

In addition to these facts, Defendants have produced records kept in the regular course of their business operations of every Plaintiff's assent to the iFIT Terms. Facer Decl. ¶ 25; ECF No. 42-1, at 74, 76. Plaintiffs may not remember agreeing to the iFIT Terms, and their declarations clearly state as much. But a reasonable jury would not be able to find for Plaintiffs on this issue when viewing the evidence as a whole. Utah law has long held that ignorance of a contract, failure to read a contract, or a lapse in memory regarding one's prior assent to a contract cannot provide a defense to the formation of such an agreement. *See, e.g.*, *John Call Eng'g, Inc v. Manti City Corp.*, 743 P.2d 1205, 1208 (Utah 1987) ("A party may not sign a contract and thereafter assert ignorance or failure to read the contract as a defense."); *Singh v. Dish Network, LLC*, 2019 U.S. Dist. LEXIS 116205, at *6–7 (D. Utah July 11, 2019) ("[C]ourts have repeatedly held that a party's inability to remember signing contracts is insufficient to raise a material issue as to the validity of the agreements." (internal quotation marks omitted)). The court therefore concludes that Plaintiffs have not demonstrated the existence of a genuine dispute as to the material fact of their assent to

the iFIT Terms. As a result, the court finds that Plaintiffs agreed to be bound by those terms.

In their opposition memorandum, Plaintiffs do not meaningfully contest the foregoing conclusion that they each agreed to the iFIT Terms. Instead, Plaintiffs argue that they "are not bringing claims based on iFIT's Terms of Use" or their iFIT memberships. In their view, their claims "are based on the defective NordicTrack Fitness Equipment," which they assert is defective because it is "no longer even capable of running live fitness classes despite that Defendants extensively featured the live-class capabilities in [their] marketing of the equipment." ECF No. 44, at 17. Plaintiffs invoke *Treinish v. iFit, Inc.*, in which another district court concluded that the iFIT Terms do not constitute a binding agreement to arbitrate claims arising out of defective NordicTrack equipment. The court finds this argument unpersuasive.

In *Treinish*, a plaintiff alleged that he purchased a NordicTrack treadmill that, on at least three occasions, unexpectedly stopped running and would not turn back on. *See Treinish v. iFit, Inc.*, No. 22-4687-DMG, 2023 U.S. Dist. LEXIS 34388, at *2–3 (C.D. Cal. Feb. 2, 2023). Applying California law, the court concluded that a valid contract was formed when the plaintiff signed up for an iFIT membership. *Id.* at *11–12. The court then analyzed the language of the iFIT Terms, finding that they "encompasse[d] only issues pertaining to the Membership, which [wa]s distinct from any purchase agreement that may have exist[ed] as to the function of the Treadmill unrelated to the Membership." *Id.* at *12–13. The court thus concluded that "no valid agreement exist[ed] that cover[ed] mechanical issues with the Treadmill" and denied iFIT's motion to compel arbitration. *Id.* at *15. Plaintiffs urge the court to follow course in the present case. The court declines to do so for two main reasons.

First, a different court reached the opposite conclusion with more persuasive reasoning in *Barclay v. ICON Health & Fitness, Inc.*, No. 19-CV-2970, 2020 U.S. Dist. LEXIS 191215 (D.

Minn. Oct. 15, 2020). In *Barclay*, the plaintiffs alleged that they purchased NordicTrack treadmills, each of which failed to achieve or maintain the continuous horsepower that iFIT and NordicTrack had represented in their marketing materials. *Id.* at *1–2. Applying Utah law, the court concluded that the iFIT Terms constituted a binding agreement between the plaintiffs, ICON, and NordicTrack. *Id.* at *29–32. The court interpreted the terms differently than the court in *Treinish*, however, concluding that the iFIT Terms *did* constitute an agreement to arbitrate claims arising out of alleged defects with NordicTrack equipment. The iFIT Terms, the court noted, "defined 'ICON' to include 'its[] affiliates, partners, licensors, subsidiaries, and/or related companies.'" *Id.* at *30 n.6 (alteration in original). "In other words," the court explained, "the Terms of Use governed, not merely Barclay and Nordick's relationship with ICON resulting from their iFit registration, but also NordicTrack"—one of ICON's "related companies." *Id.* The court thus ordered the plaintiffs to arbitrate their warranty claims arising out of mechanical problems with the NordicTrack treadmill based on the plaintiffs' agreement to the iFIT Terms. *Id.*

The same "ICON" definition discussed in *Barclay* appears in the iFIT Terms produced in connection with this motion. *See* ECF No. 42-1, at 19 ("These terms of use are entered into by and between You and ICON Health & Fitness, Inc., (together with its, affiliates, partners, licensors, subsidiaries, and/or related companies, 'ICON,' 'us,' 'our,' or 'we')."). This definition is explicitly incorporated into the iFIT Terms' arbitration clause. *Id.* at 32 ("You acknowledge and agree that *ICON* may, at its sole discretion, require you to submit any disputes arising from the use of these Terms of Use or the ICON Sites, . . . to final and binding arbitration." (emphasis added)). The plain language of the iFIT Terms therefore demonstrates that Plaintiffs agreed to arbitrate claims with all Defendants—including claims not directly related to iFIT. *See Barclay*, 2020 U.S. Dist. LEXIS 191215, at *30 n.6. The contradictory outcome in *Treinish* is unpersuasive because that court did

not address the relevant contract language that drove the outcome in *Barclay* and that appears in the iFIT Terms in the present case.

Second, even if the court adopted the reasoning in *Barclay*, the court is not persuaded by Plaintiffs' contention that their claims against Defendants are "based on the defective NordicTrack Fitness Equipment" and are therefore unrelated to the "iFIT[] Terms of Use and [Plaintiffs'] iFIT memberships." ECF No. 44, at 17. The plaintiffs in both *Treinish* and *Barclay* alleged claims arising out of the mechanical functionality of NordicTrack's exercise equipment. The core allegations in Plaintiffs' complaint, on the other hand, relate only to Defendants' decision to stop offering iFIT live classes to be streamed through NordicTrack equipment. *See, e.g.*, ECF No. 1 ("Compl.") ¶ 2 ("Despite marketing iFIT . . . as a key functional feature of [NordicTrack] equipment, Defendants ceased offering all live classes."); *id.* ¶ 4 ("NordicTrack exercise bikes and treadmills are designed for iFIT's live classes and, without them, the equipment has no value to consumers."). It is undisputed that Plaintiffs' NordicTrack exercise bikes remain operable. Plaintiffs' only allegation is that they can no longer stream iFIT live fitness classes and related content through their NordicTrack equipment because Defendants stopped offering such content when they were sued by a competitor.

The court cannot formulate any version of Plaintiffs' claims that does not relate to Defendants' discontinuance of iFIT live classes and related exercise content. And claims relating to such content are indisputably within the scope of the iFIT Terms. *See* ECF No. 42-1, at 19 ("The following terms and conditions . . . govern your access to and use of the ICON Health & Fitness websites, . . . along with *any downloadable applications, services, Content* . . . , or interface provided by us, *including iFit Services*." (emphases added)). The court therefore concludes that Plaintiffs are bound by the iFIT Terms, which are no less applicable in this case because of

Plaintiffs' baseless claim that their lawsuit arises out of functional problems with NordicTrack equipment rather than issues with iFIT services.

## II.       THE ARBITRATION PROVISION'S DELEGATION CLAUSE

In the preceding section, the court concluded that Plaintiffs each agreed to be bound by the iFIT Terms, which contain the arbitration clause upon which Defendants' motion is based. But Plaintiffs' mere agreement to an arbitration clause does not resolve the motion to compel. Instead, the court must determine whether it may adjudicate the arbitrability of the parties' claims under that arbitration clause or whether the parties instead agreed to delegate the arbitrability question to the arbitrator. *See Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1193 (2024) (stating that the court must determine the "third-order" question of "who should have the primary power" to determine the arbitrability of claims after determining that parties are bound by an arbitration clause); *see also Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017) (citing *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998)) (stating that courts must determine who decides arbitrability before addressing whether a dispute is arbitrable). Defendants insist that Plaintiffs' agreement to the iFIT Terms demonstrates that "any dispute regarding who should determine the arbitrability of their claims must be resolved by an arbitrator." ECF No. 42, at 23. The court agrees.

Like other arbitration matters, the question of who decides the arbitrability of a claim is a matter of effectuating the parties' intent as expressed through their agreement. The court will resolve the arbitrability question "unless the parties have agreed, in clear and unmistakable terms," to delegate that issue to the arbitrator. *Commc'n Workers of Am. v. Avaya, Inc.*, 693 F.3d 1295, 1303 (10th Cir. 2012) (internal quotation marks omitted); *see also Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 832 (10th Cir. 2023) (stating that "we presume that the parties intend

courts, not arbitrators," to decide arbitrability absent "clear and unmistakable evidence" to the contrary (internal quotation marks omitted)).

The iFIT Terms do not contain a delegation provision stating that the arbitrator has the power to determine the third-order question of arbitrability. Nevertheless, Defendants argue that the express incorporation of the Rules of Arbitration of the American Arbitration Association ("AAA") into the arbitration clause is sufficient to show a clear and unmistakable agreement to arbitrate arbitrability. *See* ECF No. 49, at 7 (citing *Belnap*, 844 F.3d at 1281; *Brayman*, 83 F.4th at 833). Under Tenth Circuit law, Defendants' position is correct. "[C]ontracting parties' incorporation of the AAA Rules into their arbitration agreement constitutes 'clear and unmistakable evidence of an agreement to arbitrate arbitrability.'" *Goldgroup Res., Inc. v. DynaResource de Mexico, S.A. de C.V.*, 994 F.3d 1181 (10th Cir. 2021) (quoting *Dish Network*, 900 F.3d at 1246).

The court's role is to enforce the parties' agreement, by which the parties agreed to allow an arbitrator to determine the arbitrability of their claims. The court therefore will not resolve that question. Before ordering the parties to arbitrate, however, the court must address Plaintiffs' asserted defenses to the formation and enforceability of the parties' arbitration agreement.

## III.   CONTRACT DEFENSES

There are two types of challenges to an arbitration agreement's validity. *Rent-a-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70–71 (2010) (citing 9 U.S.C. § 2). "One type challenges specifically the validity of the agreement to arbitrate" whereas "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (e.g., the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Id.* at 70 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S.

12

440, 444 (2006)). Because "an arbitration provision is severable from the remainder of the contract[,]" the first type of challenge—contesting the arbitration clause itself—may "prevent a court from enforcing a specific agreement to arbitrate[.]" *Id.* at 70–71 (quoting *Buckeye*, 546 U.S. at 445, 447). But when the parties' agreement contains a delegation clause, "any challenge to the validity of the Agreement *as a whole*" must be left for the arbitrator. *Id.* at 72 (emphasis added).

In opposition to the motion, Plaintiffs raise three contract defenses, which they assert prevent them from being bound to the iFIT Terms: illusory promises, unconscionability, and preemption under the Magnuson-Moss Warranty Act ("MMWA"). But none of these defenses prevent the court from enforcing the arbitration agreement.

### A. ILLUSORY PROMISES

Plaintiffs first argue that the iFIT Terms are an impermissible illusory contract. The iFIT Terms contain the following provision under the header "MODIFICATIONS TO TERMS OF USE":

> We expressly reserve the right to change these Terms of Use from time to time without notice to you. You acknowledge and agree that it is your responsibility to review the ICON Sites and these Terms of Use periodically and to familiarize yourself with any modifications. Your continued use of an ICON Site after such modifications will constitute acknowledgement and agreement to the modified Terms of Use. Notwithstanding the preceding sentences of this paragraph, no revisions to these Terms of Use will apply to any dispute between you and ICON that arose prior to the effective date of those revisions.

ECF No. 42-1 ("iFIT Terms"), at 19. Separately, the arbitration clause in the iFIT Terms clearly states that "ICON may, at its sole discretion, require you to submit any disputes . . . to final and binding arbitration." ECF No. 42-1, at 32.

The court understands Plaintiffs to be presenting two alternative arguments on this issue. First, Plaintiffs argue that the iFIT Terms' Modification of Terms of Use clause, which grants ICON the right to modify the Terms of Use, demonstrates that the entirety of the iFIT Terms are

an illusory contract. This argument has some support in Tenth Circuit law. *See Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002); *DeHart v. Stevens-Henager Coll., Inc.*, 2005 WL 3277777, at *2 (D. Utah Dec. 2, 2005). Plaintiffs' argument, however, relates to the iFIT Terms as a whole rather than to the arbitration clause itself. Because this challenge is to "another provision of the contract, or to the contract as a whole," the court must "leav[e] any challenge . . . for the arbitrator." *Rent-A-Center*, 561 U.S. at 70, 72. The court therefore declines to take up this challenge to the arbitration clause's enforceability because it falls within the arbitration agreement's delegation provision.

Second, Plaintiffs assert that "[t]he Tenth Circuit and courts across the country uniformly hold that arbitration provisions—such as the iFIT Terms—granting one party . . . the unilateral discretion to compel arbitration are unenforceable illusory contracts." ECF No. 44, at 20. The court may address this question because it challenges the arbitration clause itself. *See Rent-a-Center*, 561 U.S. at 70–71 (citation omitted). But the court rejects Plaintiffs' argument. Despite their assertion that an arbitration clause that grants the right to invoke arbitration to only one side of a dispute is unenforceable under settled law, Plaintiffs point to no authority supporting their argument. Moreover, "the notion of an illusory promise is simply part of the doctrine of consideration." *In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1211 (10th Cir. 2016). Thus, not every contractual provision needs to be mutual so long as each party has provided consideration to support the agreement. *Id.*; *see Rietz v. Oracle Am., Inc.*, 2017 U.S. Dist. LEXIS 164202, at *8 (D. Colo. July 20, 2017). There is no dispute that the iFIT Terms are an agreement that contains a reciprocal exchange of promises separate and apart from the unilateral arbitration clause. The court therefore finds Plaintiffs' argument regarding the

arbitration clause's unilateral enforcement mechanism to be insufficient to prevent the formation of an enforceable agreement to arbitrate.

### B.  UNCONSCIONABILITY

Plaintiffs next argue that the arbitration clause is procedurally and substantively unconscionable. Plaintiffs' procedural unconscionability argument, which asserts that the iFIT Terms are a paradigmatic contract of adhesion and therefore unenforceable under Utah law, is a challenge to the contract as a whole. The court does not address this argument because it falls within the delegation clause and is thus properly reserved for the arbitrator. *Rent-A-Center*, 561 U.S. at 70, 72. The court declines to take up two of Plaintiffs' substantive unconscionability arguments for the same reason.[1] *Id.* Only one of Plaintiffs' unconscionability arguments challenges the validity of the arbitration clause itself, such that the court "must consider the challenge before ordering compliance with that agreement" under the FAA. *Rent-A-Center*, 561 U.S. at 71. That argument, which the court must now address, asserts that "the iFIT Terms give NordicTrack a unilateral right to invoke arbitration," so the arbitration clause is "firmly one-sided" and therefore "substantively unconscionable." ECF No. 44, at 17.

"[S]ubstantive unconscionability alone may support a finding" that a contract is unenforceable, absent any proof of procedural unconscionability. *Red Bridge Capital, LLC v. Jar Family Inv. Co.*, 319 P.3d 754, 756 (Utah Ct. App. 2014) (quoting *Com. Real Estate Inv., L.C. v. Comcast of Utah II, Inc.*, 285 P.3d 1193, 1203 (Utah Ct. App. 2012)). Substantive unconscionability analysis "focuses on the contents of an agreement, examining the relative fairness of the obligations assumed." *Id.* at 757 (quoting *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d

---

[1] The court addresses neither Plaintiffs' argument that Defendants "attempt to utilize a purported waiver in its iFIT Terms to strike Plaintiffs' class allegations and limit their (and Class members') remedies" nor their argument that iFIT Terms "entitle Defendants—but only Defendants—to attorney fees and costs in arbitration without any limiting principle." ECF No. 44, at 17.

395, 402 (Utah 1998)). "Even if a contract term is unreasonable or more advantageous to one party, the contract, without more, is not unconscionable—the terms must be so one-sided as to oppress . . . an innocent party." *Id.* (quoting *Ryan*, 972 P.2d at 402). "In determining substantive unconscionability," we therefore consider "whether a contract's terms are so one-sided as to oppress or unfairly surprise an innocent party or whether there exists an overall imbalance in the obligations and rights imposed by the bargain . . . according to the mores and business practices of the time and place." *Id.* (quoting *Ryan*, 972 P.2d at 402). There exists little authority regarding the substantive unconscionability of one-sided arbitration clauses. Defendants have pointed, however, to three opinions written by judges on this court, all of whom concluded that similar provisions were not substantively unconscionable merely by dint of an arbitration clause permitting only one-sided enforcement.

First, in *Miller v. Corinthian Colleges, Inc.*, the court concluded that the plaintiffs objecting to arbitration did not even "touch on substantive unconscionability" when they argued that an arbitration clause that permitted mandatory arbitration to be enforced only against one party to the agreement was substantively unconscionable. 769 F. Supp. 2d 1336, 1345 (D. Utah 2011) (distinguishing *Sosa v. Paulos*, 924 P.2d 357 (Utah 1997)).

More recently, in *Love v. Overstock.com, Inc.*, the court was asked to determine whether an arbitration clause was substantively unconscionable because it required a consumer to arbitrate all issues while permitting the vendor to seek injunctive relief in a court of competent jurisdiction in certain circumstances. *Love v. Overstock.com, Inc.*, No. 2:22-CV-00118-DBB-CMR, 2022 U.S. Dist. LEXIS 144978, at *13–14 (D. Utah Aug. 12, 2022). The court declined to find the arbitration provision substantively unconscionable for three reasons: first, because the consumer was able to assert a claim for injunctive relief in arbitration, meaning the parties were not placed in different

positions with regard to the type of relief that they could pursue; second, because "carve-outs" written in this manner are "common business practice"; and third, because the carve-out permitted the vendor to seek a court-ordered injunction only if the consumer breached four particular provisions of the agreement. *Id.* (citing 2 IAN C. BALLON, E-COMMERCE AND INTERNET LAW § 22.05(2)(M)(i) (Westlaw 2020)). The court cited *Miller* favorably and declined to follow *Patterson v. Nine Energy Service, LLC*, where a different district court concluded that a one-sided arbitration provision was substantively unconscionable in forcing a borrower to arbitrate while granting a lender access to the courts. *See id.* at 13 (distinguishing *Patterson v. Nine Energy Serv., LLC*, 330 F. Supp. 3d 1280 (D.N.M. 2018)).

Most recently, Magistrate Judge Kohler penned an order granting a motion to compel arbitration, concluding that a one-sided arbitration provision was not substantively unconscionable. *See Teske v. Paparazzi, LLC*, No. 4:22-CV00035-DN-PK, 2023 U.S. Dist. LEXIS 59515, at *10–11 (D. Utah Apr. 3, 2023). The court relied upon *Love v. Overstock, Inc.*, concluding that for the same reasons stated in that decision, the one-sided arbitration provision was not substantively unconscionable. *Id.* The court also noted that the district court's opinion in *Patterson* reaching a contrary conclusion was not persuasive because "[w]hile this may be the law in New Mexico, the Teske Plaintiffs point to no similar law in Utah." *Id.* at 11 (citing *Patterson*, 330 F. Supp. 3d at 1310–11).

The court does not find the iFIT Terms' arbitration clause to be "so one-sided as to oppress or unfairly surprise an innocent party or whether there exists an overall imbalance in the obligations and rights imposed by the bargain . . . according to the mores and business practices of the time and place." *Red Bridge Capital*, 319 P.3d at 757 (ellipsis in original) (quoting *Ryan*, 972 P.2d at 402). Instead, this court finds *Miller*, *Love*, and *Teske* to be persuasive and joins their

common conclusion. An arbitration clause that permits one-sided enforcement is not substantively unconscionable when the clause permits either party to seek equal relief regardless of whether the dispute is resolved in court or in arbitration. The commonality of one-sided arbitration clauses in business further undermines Plaintiffs' claim that the arbitration clause is unconscionable. The court therefore rejects this defense, proceeding to Plaintiffs' final argument in opposition to the arbitration clause's enforcement.

### C.  MAGNUSON-MOSS WARRANTY ACT

Plaintiffs argue that "the Court should deny arbitration as to Plaintiffs' MMWA claims, even if it rules that Defendants' alleged agreements to arbitrate are valid and enforceable." ECF No. 44, at 23. Plaintiffs' argument proceeds as follows: Using authority expressly delegated in the MMWA, the FTC promulgated Rule 703, which provides that "[d]ecisions of [any] Mechanism shall not be legally binding on any person." 16 C.F.R. § 703.5(j). Because the FTC further defined "Mechanism" to mean any "informal dispute settlement procedure which is incorporated into the terms of a written warranty," Plaintiffs insist that the arbitration clause contained in the iFit Terms is unenforceable as applied to the Plaintiffs' MMWA claims. *Id.* For three reasons, the court finds this argument insufficient to prevent the enforcement of the arbitration clause.

First, Plaintiffs plainly seek to assert their rights under the MMWA in order to limit the scope of issues that are subject to arbitration. *See* ECF No. 44, at 18 ("At Minimum, Plaintiffs' Magnuson-Moss Warranty Act Claims are *Excepted* From Any Valid and Enforceable Arbitration Agreement." (emphasis added)). As discussed above, the parties agreed to arbitrate questions of arbitrability.[2] "[Q]uestions of arbitrability" include "questions regarding the existence of a legally binding and valid arbitration agreement, *as well as questions regarding the scope of a concededly*

---

[2] *See* Section II, *supra*.

*binding arbitration agreement*." *Rent-A-Center*, 561 U.S. at 78 (emphasis added); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67–68 (2019) ("[P]arties may agree to have an arbitrator decide . . . 'gateway questions' of 'arbitrability,' such as whether the parties['] . . . agreement covers a particular controversy."). Because the parties agreed to allow the arbitrator to determine questions of arbitrability, including the scope of the matters that are subject to the parties' arbitration agreement, the arbitrator—rather than the court—should determine whether the MMWA alters the scope of arbitrable issues in this case.

Second, even if the court's role were to determine the MMWA's applicability and effect, it would conclude that the FTC's Rule 703 upon which Plaintiffs rely is inapplicable to the parties' particular arbitration agreement. As discussed above, Plaintiffs noted that Rule 703's "mechanism" definition makes the rule applicable to an "informal dispute settlement procedure which is incorporated into the terms of a written warranty." 16 C.F.R. § 703.1(e). But the iFIT Terms do not qualify as a written warranty. The FTC defines "written warranties" as follows:

> (1) Any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or
>
> (2) Any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

16 C.F.R. § 703.1(c); *see Seney v. Rent-A-Center, Inc.*, 738 F.3d 631, 635 (2013) (concluding that the FTC's "ban on binding arbitration" applies to "'written warranties' in *sales* agreements" but "do[es] not reach warranties included in *leases*" (emphasis in original)).

Subsection (1) of the "written warranty" definition seems not to apply to the iFIT Terms, which expressly disclaim any warranty of merchantability or fitness for a particular purpose. *See* ECF No. 42-1, at 28. Subsection (2) seems not to apply, either. The iFIT Terms do not provide for any undertaking "to refund, repair, replace, or take other remedial action" if the product—iFIT's website and related services—"fail[] to meet the specifications set forth" within the iFIT Terms. Instead, the iFIT Terms state that ICON reserves "the sole right to modify or *discontinue* an ICON Site or any portion of an ICON Site, at any time with or without notice to you" and that ICON will "not be liable" should it exercise any such right. *Id.* at 19–20 (emphasis added). The court thus concludes that the iFIT Terms are not a "written warranty" subject to the FTC's rule regarding informal dispute settlement procedures. And Plaintiffs failed to demonstrate that the definition applied to the iFIT Terms when asserting this defense.

Third, even if the court determined that the MMWA altered the scope of the parties' arbitration agreement and found that Rule 703 applied to the iFIT Terms, the court would conclude that the FTC's rule does not prevent the enforcement of the parties' arbitration clause. Courts have split as to whether the MMWA and Rule 703 together foreclose binding arbitration of express warranty claims. *Compare Walton v. Rose Mobile Homes*, 298 F.3d 470, 478 (5th Cir. 2002) (concluding that MMWA written warranty claims may be subject to binding arbitration because the MMWA's text, legislative history, and purpose are not in conflict with enforcement of an arbitration agreement under the FAA), *and Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1271–72 (11th Cir. 2002) (same), *with Rickard v. Teynor's Homes, Inc.*, 279 F. Supp. 2d 910 n.9 (N.D. Ohio 2003) (collecting cases in which some federal district courts and state appellate courts have concluded that the MMWA precludes binding arbitration under FTC Rule 703)). This court is persuaded by the Fifth and Eleventh Circuits' analysis of the MMWA's text, history, and purpose,

20

and follows those courts' shared conclusion that FTC Rule 703 does not preclude binding arbitration of MMWA claims.[3] The court therefore rejects Plaintiffs' argument that the MMWA prevents the court from ordering the parties to arbitrate these claims.

The parties are bound to the Terms of Use. That agreement expressly incorporated the AAA Rules, demonstrating the parties' clear and unmistakable agreement to arbitrate arbitrability. The court therefore "possesses no power to decide the arbitrability issue" and grants Defendants' motion to compel arbitration. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

## IV.   STAY VERSUS DISMISSAL

The only remaining issue is whether the court should stay or dismiss the case. The FAA provides, "If any suit . . . be brought . . . upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . shall on application of one of the parties stay the trial until such arbitration has been had . . . ." 9 U.S.C. § 3. The circuits have long been split on whether this FAA provision requires courts to stay the action pending arbitration or whether it allows them to dismiss the case. *See Braxton v. O'Charley's Rest. Props., LLC*, 1 F. Supp. 3d 722, 728–29 (W.D. Ky. 2014) (describing this split and collecting cases). In the Tenth Circuit, the "proper

---

[3] The Supreme Court has not opined on this issue, and there is no Tenth Circuit precedent for this court to follow. The court is not aware of any circuit court authority that contradicts either the Fifth Circuit's decision in *Walton* or the Eleventh Circuit's decision in *Davis*.

The court reaches its conclusion in part because courts that decide the issue the opposite way often have relied upon *Chevron* deference to the FTC's rule. *See, e.g., Higgs v. Warranty Grp.*, 2007 U.S. Dist. LEXIS 50064, at *26–27 (S.D. Ohio July 11, 2007) ("Although recognizing the deep divide among the circuits on the issue of the effect of mandatory arbitration clauses for claims arising under the MMWA, the Court concludes that the FTC's regulations are entitled to deference under *Chevron*."). Plaintiffs likewise urged this court to resolve this issue by applying *Chevron* deference. *See* ECF No. 44, at 25–27 ("Whether Rule 703 constitutes a reasonable interpretation of the MMWA is subject to a two-step inquiry. *See Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).").

Because *Chevron* is no longer good law, the court finds additional reason to adopt the view of the Fifth and Eleventh Circuits, which relied upon the MMWA's statutory text, history, and purpose, rather than applying *Chevron* deference to the FTC's rule. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024) ("*Chevron* is overruled.").

course" is to "stay the action pending arbitration." *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 954 (10th Cir. 1994); *see Bradford v. Pilot Travel Ctrs., LLC*, No. 2:18-CV-202, 2018 WL 4082345, at *1–2 (D. Utah Aug. 27, 2018) (staying rather than dismissing the case). Accordingly, the court stays proceedings pending arbitration.

## CONCLUSION AND ORDER

For the reasons stated herein, the Renewed Motion to Compel Arbitration (ECF No. 42) is **GRANTED**. The court therefore **ORDERS** Plaintiffs to submit their claims to individual arbitration and **STAYS** this action pending arbitration. Defendants' alternative motion to dismiss Plaintiffs' class claims is **DENIED** as moot.

Signed September 19, 2024.

BY THE COURT

Jill N. Parrish
United States District Court Judge

22